UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 96-70-01 ML |
| | : | |
| ROBERT SMITH | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Robert Smith ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on November 14, 2005, December 13, 2005, and January 17, 2006. On January 17, 2006, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms and conditions of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment of fourteen (14) months and that there be no further term of supervised release.

**Background**

On March 21, 1997, Defendant appeared before the Honorable Mary M. Lisi, United States District Judge, after having pled guilty to one count of conspiracy to commit bank fraud (Count 1), a class D felony, and eight counts of bank fraud (Counts 2-6, 8-10), a class B felony. Judge Lisi sentenced Defendant to five years imprisonment on each count and ordered that the sentences run concurrently. Judge Lisi also ordered that upon release from

imprisonment Defendant would be on supervised release for five years on Counts 2-6 and 8-10 and for three years on Count 1. The periods of supervised release were concurrent. As a special condition of supervision, Defendant was required to participate in and satisfactorily complete an approved outpatient program for the treatment of substance abuse. Also as a special condition of supervision, Defendant was ordered to make restitution (for which he and his co-defendants were jointly and severally liable) in the amount of $123,198.37 and to pay a special assessment of $450.00. On August 12, 2003, Defendant's conditions were modified by including a special condition that he participate in an inpatient or outpatient program approved by the U.S. Probation Department for substance abuse, which program may also include drug testing in order to determine whether he has reverted to the use of drugs or alcohol.

**The Prior Violation**

On October 2, 2003, Defendant appeared before Judge Lisi after having admitted to violating the following conditions of supervision: 1) that he not commit another federal, state or local crime; 2) that he refrain from any unlawful use of a controlled substance; 3) that he report to the probation officer and submit truthful and complete written reports within the first five days of each month; 4) that he work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons; and 5) that he participate in an inpatient or outpatient substance abuse program approved by the U.S. Probation Department, which program may include testing to determine whether he has reverted to the use of drugs or alcohol. For this violation, Defendant was sentenced to a term of imprisonment of twenty-one months to be followed by a term of supervised release for thirty-nine months on Counts 2-6 and 8-10 and twelve months supervised release on Count 1. The terms of

supervised release were concurrent. As a special condition of supervised release, Defendant was required to participate in and satisfactorily complete an inpatient program approved by the U.S. Probation Department for the treatment of substance abuse and additionally, after completing such inpatient program, to participate in and satisfactorily complete a similarly approved outpatient program which included testing for the detection of substance use or abuse. Also as a special condition of supervised release, Defendant was again ordered to make restitution in the amount of $123,198.37.

**The Present Violation**

Supervised release recommenced on March 17, 2005, following Defendant's release from prison.

**The Original Petition**

On or about October 28, 2005, U.S. Probation Officer David S. Borrelli ("U.S.P.O. Borrelli") filed a Petition for Summons for Offender under Supervision (the "Petition"). The Petition alleged that Defendant had violated supervised release by: 1) operating a motor vehicle on September 26, 2005, with a suspended license; 2) using cocaine and marijuana as evidenced by positive urine specimens obtained from Defendant on March 21, 2005, September 28, 2005, and October 18, 2005, and Defendant's admissions to drug use; 3) repeatedly failing to follow the instructions of his probation officer not to use his cousin's Prozac medication and not to operate a motor vehicle while his license was suspended; and 4) failing to apply for four jobs per day and documenting this action on an employment log as instructed by his probation officer.

Acting on the Petition, Judge Lisi ordered the issuance of a summons for Defendant to appear to answer to the allegations of violation. The summons was served, and Defendant appeared before this Magistrate Judge on November 14, 2005. At that time,

Defendant was advised of the Petition and of the grounds for the alleged violation.

**The Continuance of the Violation Hearing**

The Government then moved to continue the matter for sixty days, citing the fact that Defendant's compliance with the supervision had recently improved. The Government requested that Defendant be allowed to demonstrate that he could comply with all the terms and conditions of supervised release. Defense counsel, Edward C. Roy, Jr., concurred in this course of action.

The court granted the Government's request and continued the hearing on the violation to January 16, 2006. However, the Probation Department was directed to notify the court immediately if in the meantime Defendant failed to comply with any of the conditions of supervision. In that event, Defendant was to be brought before the court and the hearing on the pending violations would proceed. On the other hand, if Defendant's improved compliance continued, the Government indicated that it would move to withdraw the Petition on January 16, 2006.

**The December 7, 2005, Notification**

On December 7, 2005, U.S.P.O. Borrelli notified this Magistrate Judge that Defendant had again violated supervision by using marijuana, by failing to participate in substance abuse and mental health treatment, and by failing to report to the Probation Department for a drug test. U.S.P.O. Borrelli requested that a hearing be scheduled in order to resume the violation proceeding which had commenced on November 14, 2005. Responding to this information, the court scheduled a hearing for December 13, 2005.

Defendant did not appear at the scheduled hearing. The court confirmed with U.S.P.O. Borrelli that he personally advised Defendant of the hearing and that Defendant was aware of the time and place of the hearing. The Government requested a warrant,

and the court ordered that a warrant be issued because of Defendant's failure to appear for the hearing to answer to the violations alleged in the Petition.

**The Amended Petition**

On or about December 13, 2005, U.S.P.O. Borrelli filed an Amended Petition for Warrant for Offender Under Supervision ("Amended Petition"). The Amended Petition re-alleged the grounds for violation contained in the Petition and added the additional ground that Defendant committed an armed robbery of a bank on December 7, 2005. On December 14, 2005, Judge Lisi ordered the issuance of a warrant based on the Amended Petition.

Defendant was apprehended and appeared before this Magistrate Judge on January 17, 2006. At that time Defendant was advised of the Amended Petition and of the grounds for the alleged violations. In so advising Defendant, the court recited the information which appears below and which is taken from the Amended Supervised Release Violation Report dated December 13, 2005 (the "Amended Report").

**Standard Condition: While on supervised release, Defendant shall not commit another federal, state, or local crime.**

On September 26, 2005, Defendant operated a motor vehicle with a suspended license as evidenced by his October 5, 2005, plea of nolo contendere in Sixth Division District Court. Defendant was pulled over on Garfield Street by a Central Falls, Rhode Island, police officer. At the time, Defendant was operating an unregistered motor vehicle with registration plates issued to another vehicle. Because his license was suspended, Defendant was arrested and charged accordingly. Following his plea of nolo contendere, a sentencing hearing was scheduled for November 17, 2005.

**Standard Condition: Defendant shall refrain from any unlawful use of a controlled substance.**

Defendant used cocaine and marijuana as evidenced by his March 21, 2005, and October 18, 2005, positive urine specimens and admissions to drug use. Also, he used marijuana on September 28, 2005, as evidenced by his positive urine screen and admission to drug use.

As to this violation, Defendant reported to the U.S. Probation Office on March 21, 2005, after having been released from the Federal Bureau of Prisons on March 17, 2005. He submitted to an instant drug test and the results were positive for cocaine and marijuana. Defendant advised that on March 18, 2005, he was driving in an automobile with some friends and he smoked a marijuana cigarette with them. Although Defendant adamantly denied using cocaine, he acknowledged that the cigarette may have been laced with cocaine. Defendant was verbally reprimanded for his actions and referred for inpatient substance abuse treatment.

On September 28, 2005, Defendant submitted a urine specimen that tested positive for marijuana. On September 29, 2005, Defendant met with U.S.P.O Borrelli and acknowledged that he had smoked marijuana three weeks earlier and four days prior to his most recent urinalysis screening. He was verbally admonished for his actions and placed in the Random Urinalysis Color Code Program.

On October 18, 2005, Defendant submitted a urine specimen that tested positive for marijuana and cocaine. On October 19, 2005, he met with U.S.P.O Borrelli and admitted using cocaine at a club after having consumed several beers during the previous weekend. He received a verbal reprimand and was told that the court would be notified and violation proceedings would be sought.

**Condition #3: Defendant shall follow the instructions of the probation officer.**

Defendant has failed to discontinue using his cousin's Prozac medication as directed by U.S.P.O. Borrelli on September 29, 2005, October 13, 2005, October 18, 2005, and October 19, 2005. As to this violation, upon his release from the Federal Bureau of Prisons, Defendant secured psychiatric services at Crossroads in Cranston, Rhode Island, as he needed treatment for depression. In accordance with his treatment with the Bureau of Prisons, Crossroads prescribed Defendant Prozac, an anti-depressant medication. On September 29, 2005, however, Defendant met with U.S.P.O. Borrelli and advised that he had been using his cousin's Prozac after having discontinued receiving psychiatric services from Crossroads. Defendant indicated that he had just stopped going to them for services. Defendant was directed by U.S.P.O. Borrelli to contact Crossroads and arrange an appointment to receive his own medication. Further, he was told to discontinue self-medicating with his cousin's Prozac and advised that using his cousin's prescription medication was a violation of his supervision.

On October 13, 2005, Defendant met with U.S.P.O. Borrelli and stated that he had not contacted Crossroads for psychiatric services as directed by U.S.P.O. Borrelli on September 29, 2005. Further, Defendant admitted that he was still self-medicating with his cousin's Prozac medication. He was instructed to discontinue using his cousin's Prozac and to contact Crossroads for services. Additionally, Defendant was counseled that punitive action could be taken by the court if he continued to use his cousin's medication.

On October 18, 2005, U.S.P.O. Borrelli met with Defendant during an unannounced home visit. Again, Defendant advised that he had not discontinued using his cousin's Prozac medication.

U.S.P.O. Borrelli once again instructed Defendant to discontinue using his cousin's Prozac and verbally admonished him for his continued use of this medication. On October 19, 2005, Defendant reported to the U.S. Probation Office and advised that he was still using his cousin's Prozac. U.S.P.O. Borrelli admonished Defendant and directed him to discontinue his use of this medication until such time as it was prescribed to him by his own physician.

**Condition #3: Defendant shall follow the instructions of the probation officer.**

Defendant, whose license was suspended, has failed to discontinue operating a motor vehicle without a license as directed by U.S.P.O. Borrelli on September 29, 2005, October 13, 2005, October 18, 2005, and October 19, 2005. Regarding this violation, Defendant admitted to U.S.P.O. Borrelli on September 29, 2005, that he was continuing to operate a motor vehicle despite having a suspended license. U.S.P.O. Borrelli counseled Defendant on the possible sanctions he could incur if he continued to engage in this activity. Defendant was directed to discontinue operating any motor vehicles until he had a valid driver's license.

On October 13, 2005, U.S.P.O. Borrelli conducted an unannounced home visit with Defendant. Defendant once again admitted operating a motor vehicle without a valid license. He was instructed by U.S.P.O. Borrelli to discontinue driving motor vehicles and that, if he continued to do so, he may be sanctioned by the court. On October 18, 2005, U.S.P.O. Borrelli conducted another unannounced home visit with Defendant, and he again admitted operating a motor vehicle without a valid license. U.S.P.O Borrelli again admonished Defendant and directed him to discontinue operating any motor vehicles. On October 19, 2005, Defendant reported to the U.S. Probation Office and advised

U.S.P.O. Borrelli that he had driven himself to the Probation Office in his unregistered motor vehicle and without a valid license. U.S.P.O. Borrelli verbally reprimanded Defendant and advised him that violation proceedings would be sought.

**Condition #3: Defendant shall follow the instructions of the probation officer.**

Defendant failed to apply for four jobs per day and document this activity on an employment log as he was directed by U.S.P.O. Borrelli on October 13, 2005. As to this violation, on October 13, 2005, U.S.P.O. Borrelli met with Defendant during an unannounced home visit and provided him with employment verification sheets. Defendant was directed to apply for four jobs per day and to document this activity on the verification sheet daily. On October, 18, 2005, U.S.P.O. Borrelli met with Defendant, who advised that he had failed to fill out the employment verification sheets.

**Standard Condition: While on supervision, Defendant shall not commit another federal, state, or local crime.**

Defendant committed an armed robbery of a Citizens Bank branch located in Attleboro, Massachusetts, on December 7, 2005. As to this violation, on December 7, 2005, a masked black male brandishing a handgun robbed a Citizens Bank branch located in Attleboro, Massachusetts. The robber obtained approximately $19,000 during the robbery and fled the scene in a red Acura. As the culprit was leaving the scene, he took off his mask and almost struck a security guard with his vehicle. The guard, Jose Pagan, was able to observe the man's full facial features as the robber passed him in the vehicle. After passing the security guard, dye packs contained within the money detonated, filling the vehicle with red spray and tear gas. Shortly thereafter, the culprit abandoned the vehicle and escaped on foot. The automobile was secured by Attleboro police and searched.

Officers were able to retrieve a photo identification card for Defendant as well as Rhode Island registration plates belonging to Defendant within the vehicle.

After a photo of Defendant was obtained from the Central Falls, Rhode Island, Police Department, a photo lineup was presented to Jose Pagan. Mr. Pagan positively identified Defendant as the person who had committed armed bank robbery on December 7, 2005. On December 9, 2005, a warrant was issued for Defendant's arrest by the Honorable Gregory Phillips of the Trial Court of Massachusetts in Attleboro, Massachusetts. On the same date, Defendant spoke with U.S.P.O. Borrelli and indicated that he would not be surrendering to law enforcement officers. Defendant indicated that the automobile used in the robbery was no longer his and that he needed to explain things before taking the "fall" for this offense.

**The Admission**

After the court had completed the above recitation of the grounds for violation, the Government moved to withdraw the violation that Defendant committed armed bank robbery. The court granted the withdrawal. Immediately thereafter, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms and conditions of his supervised release as stated in the Amended Petition (except as to the ground which the Government had withdrawn). This admission satisfied the court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. After receiving sentencing recommendations from both the Government and the defense, the court stated that it would recommend the sentence expressed in this Report and Recommendation.

## Law

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release was previously imposed. Therefore, the term cannot be extended.

Pursuant to Section 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than five years in prison if the offense that resulted in the term of supervised release was a class A felony, three years for a class B felony, two years for a class C or D felony, or one year for a class E felony or a misdemeanor. Here Defendant was on supervision for class B and D felonies. Therefore, he may not be required to serve more than

three years imprisonment upon revocation as to Counts 2-6 and 8-10 and two years imprisonment upon revocation as to Count 1. However, since Defendant has already served twenty-one months imprisonment as a result of the prior revocation, the statutory maximum term of imprisonment remaining is fifteen months on Counts 2-6 and 8-10 and three months on Count 1.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here five years on Counts 2-6 and 8-10 and three years on Count 1), less any term of imprisonment that was imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation.

Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C violation.

Pursuant to Section 7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade C violation, the court may revoke, extend, or modify the conditions of supervision. Therefore, since Defendant committed a Grade C violation, the court may revoke, extend, or modify the conditions of supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The second provision, which allows for alternatives for one-half of the minimum term, applies to this matter.

According to Section 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent

confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is an outstanding restitution in the amount of $123,198.37.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is five years on Counts 2-6 and 8-10 and three years on Count 1. A term of twenty-one months imprisonment was imposed for the prior violation of supervised release. Therefore, the court may impose the above-noted statutory maximum, minus the twenty-one months previously imposed, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to Section 7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of VI at the time of sentencing. The Revocation Table contained in Section 7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of VI, an imprisonment

range of eight to fourteen months is warranted.[1]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

## Disposition

**Recommendations By Government and Defense**

The Government recommended that the court impose a sentence of fifteen months imprisonment with no further supervision. In making this recommendation, the Government noted that this is Defendant's second violation of supervised release and that Judge Lisi had sentenced him to twenty-one months for the first violation. Assistant United States Attorney Adi Goldstein additionally argued that the nature and number of the violations justify imposition of the maximum sentence. She noted that Defendant continues to abuse drugs including prescription medication and alcohol, that he continues to operate a motor vehicle without a license, and that he has failed to comply with the conditions of supervised release despite repeated attempts by U.S.P.O. Borrelli to help him.

Defense counsel Edward Roy asked the court to reduce the fifteen months recommended by the Government by some small measure. Mr. Roy acknowledged that the violations to which Defendant had admitted did not present a favorable picture of him. However, Mr. Roy pointed out that Defendant waived a violation hearing and admitted to the violations and asked the court to take this into consideration in recommending a sentence.

Defendant was offered the opportunity to address the court

[1] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

regarding sentencing, but declined.

**Discussion**

The circumstances identified by the Government weigh heavily in favor of a sentence at the high end of the guideline range. However, the court declines to recommend a sentence above the guideline range as sought by the Government. Although the Government's recommendation is only one month more than the high end of the guideline range, the court deems it advisable to continue to adhere to the practice of giving defendants who waive a hearing and admit to the violation the benefit of a slight reduction in the sentence to be recommended. In most cases, at the very least the reduction takes the form of a sentence which is less than the top of the guideline range. In this case, the court deems any reduction from the top of the guideline range inappropriate because of the multiple nature of the violations and the fact that Defendant was given repeated chances to demonstrate that he could comply with the conditions of supervision. Therefore, the court gives Defendant the benefit of a slight reduction in the sentence to be recommended by electing to recommend fourteen months rather than the fifteen months sought by the Government.

Defendant by his conduct has demonstrated that it would be a waste of judicial resources to impose another period of supervised release. He has repeatedly spurned attempts by the Probation Department to assist him in avoiding a return to prison. The limited resources of the Probation Department are better directed towards trying to help defendants who want to be helped. Also weighing against the imposition of an additional period of supervised release is the fact that the period of imprisonment available in the event of another violation is only a month (if a sentence of fourteen months imprisonment is imposed). This is too brief a period of time to have any real

deterrent effect. Accordingly, I recommend that there be no further period of supervised release.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of imprisonment of fourteen (14) months and that there be no further term of supervised release. I further recommend that he be ordered to pay the outstanding restitution of $123,198.37.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
January 24, 2006